IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RICKY SENESACKDA                                                    PLAINTIFF

        v.                        Civil No.  15-5004

NURSE PEGGY CHANEY, Benton County
Detention Center (BCDC); LIEUTENANT DARNER,
BCDC; SERGEANT DEWEY, BCDC;
LIEUTENANT MARTINEZ, BCDC;
LIEUTENANT HEATH, BCDC; and
SHERIFF KELLY CRADDUCK                                             DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff

proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Arkansas Department of Correction (ADC),

Wrightsville Unit.  The events at issue in this case occurred while the Plaintiff was incarcerated

in the Benton County Detention Center (BCDC).   Specifically, Plaintiff maintains the

Defendants denied him adequate medical treatment in violation of the Eighth Amendment to the

United States Constitution.

Separate Defendant Nurse Peggy Chaney filed a motion for summary judgment (Doc.

28).  The Benton County Defendants filed a motion for summary judgment (Doc. 31).  On

January 6, 2016, a hearing was held to allow the Plaintiff to respond to the motions by testifying.

The motions are now ready for decision.

Plaintiff has sued the Defendants in both their individual and official capacities.

However, at the hearing Plaintiff stated that he was no longer pursuing any official capacity

-1-

claims.   Plaintiff additionally announced his intention to dismiss all claims against Lieutenant Heath.  Defendants had no objection to these claims being dismissed.

### 1.  Background

On December 6, 2014, the Plaintiff was involved in a motor vehicle accident.  He injured his left leg.  He was treated at Northwest Medical Center; x-rays were taken of his left ankle, left knee, pelvis, and right tibia and fibula; he was given a prescription for etodolac,[1] 400 mg., 1 tablet, twice a day, for 7 days as needed for pain; told he had a major sprain of his knee and ankle on his left leg; his knee and ankle were wrapped in ace bandages; and he was placed in a knee immobilizer. *Benton County Defendants' Ex.* (hereinafter *BC Defts' Ex.*) A-1 at 24-30.[2] He was instructed to follow-up with Dr. Randy Conover within five to seven days.  *Id.*

Upon release from the hospital on December 6th, Plaintiff was booked into the BCDC. *BC Defts' Ex.* A-1 at 70.  He remained incarcerated there until June 9, 2015, when he was transferred to the ADC. *Id.*  Nurse Peggy Chaney is employed by Southern Health Partners, Inc., and assigned to the BCDC. *Medical. Defendant's Exhibit* (hereinafter *Med. Deft's Ex.*) 1 at ¶¶ 2-3.

On Plaintiff's  medical questionnaire, completed as part of the booking process, it was noted he was on medication, had just come from the hospital, and was physically handicapped because of his left leg. *BC Defts' Ex.* A-1 at 31.  Plaintiff testified he was in a wheel chair at the time and in a brace or immobilizer.  Plaintiff testified he was given one Ibuprofen tablet by a

---

[1]Etodolac is used to treat pain, tenderness, swelling, and stiffness. https://www.nlm.nih.gov/medlineplus/druginfo/meds/a692015.html (accessed May 25, 2016).

[2]The page number is to the jail file.  The number is located at the center of the bottom of each page.

nurse when he was booked in.  He could not recall the nurse's name.  Plaintiff testified he put in requests to see the nurse and when he did not hear anything in response, he submitted grievances.

Plaintiff testified that with the exception of the single tablet of Ibuprofen he was given when he was booked in, he did not begin receiving any medication until December 12th.  Then, instead of being given the prescribed etodolac, he was given Ibuprofen.  In contrast, by affidavit, Nurse Chaney states Plaintiff was prescribed and administrated Ibuprofen 800 mg., twice a day, for seven days beginning on December 6, 2014.  *Med. Deft's Ex* 1 at ¶ 11; *Med. Deft's Ex.* 1-C.  The medication administration records also appear to indicate that Plaintiff began receiving Ibuprofen on December 6th and received it twice a day until December 12th.[3]  *Med. Deft's Ex.* 1-D.  Plaintiff testified that he did not initial this record and that it is incorrect.

On December 8, 2014, Plaintiff submitted a request saying that he had been there since the 6th, when he was transported straight from the hospital, but had not yet received medical attention.  *BC Defts' Ex.* A-1 at 90.  He indicated his leg and foot were swollen even worse and he needed medical attention "ASAP!!!"  *Id.*  Plaintiff was advised that it was his responsibility to put in a medical request.  *Id.*  His request was forwarded to medical staff.  *Id.*  Medical staff noted that he was seen on December 10th.  *Id.*

On December 9th, a form entitled "medical staff receiving screening form" was completed.  *BC Defts' Ex.* A-1 at 37.  It noted Plaintiff' mobility was restricted because his left leg was in a brace.  *Id.*  With respect to prescription medication, "n" for no was circled.  *Id.*

---

[3]There was no testimony or other evidence in the record to establish what the markings on the record indicate.

On December 10th, Plaintiff submitted a request asking when he would get the right medication for his leg and find out what was wrong with his leg. *BC Defts' Ex.* A-1 at 94. In response, he was told he was on the list to see the doctor on December 11th. *Id.*

Plaintiff testified he first saw the doctor on December 12, 2014. Dr. Saez noted Plaintiff had a left knee sprain and a left ankle sprain. *BC Defts' Ex.* A-1 at 34. Dr. Saez's plan was to await Plaintiff's x-rays. *Id.* There is no indication that Dr. Saez prescribed any medication on this date.

On December 13th, Plaintiff submitted a request saying he needed more medication. *BC Defts' Ex.* A-1 at 35. Plaintiff testified that the Ibuprofen was not helping. His written medical request, however, did not mention that the Ibuprofen was not effective. *Id.* The records indicate Ibuprofen 400 mg. was prescribed on December 13th for seven days, twice a day, by Dr. Saez. *Med. Deft's Ex.* 1-C.

On December 15, 2014, Plaintiff submitted a request to see the doctor about his leg. *BC Defts' Ex.* A-1 at 100. In response he was told: "you have seen the doctor what else is going on?" *Id.*

On December 16, 2014, Plaintiff submitted a request that said the Ibuprofen was not doing anything for his leg. *BC Defts' Ex.* A-1 at 101. In response, it was noted he was seen that day by "[P]eggy." *Id.*

On December 16th, Dr. Saez completed a form entitled "admission data/history and physical form." *BC Defts' Ex.* A-1 at 36. The form does not mention the Plaintiff's leg injury or that he was on Ibuprofen. *Id.*

-4-

On December 19, 2014, Plaintiff submitted a request stating: "when am I suppose to see the doctor about my leg again?  I was told by nurse [P]eggy that I was suppose to see the doctor today about my leg but I was never called out for it.  the Ibupro. is not helping the pain at all." *BC Defts' Ex.* A-1 at 111.  In response, Plaintiff was told the doctor would be there on Sunday and he would be seen then.  *Id.*

Plaintiff testified that Nurse Chaney took the brace away from him after two weeks.  He stated this was true even though he had been told at the hospital that he should wear it for up to a month.  He testified that he was able to walk better with the brace.  Plaintiff testified that he did not submit any requests or grievances about the brace being taken away since he did not know how long he was supposed to be in it.

On December 21, 2014, Plaintiff submitted a request saying: "I do not see why it is so hard for me to seek the proper 'MEDICAL ATTENTION!!!'"  My left leg is in complete pain from my injury from a car accident." *BC Defts' Ex.* A-1 at 109.  In response, he was told: "you have been seen by the doctor and you have been to the hospital as well." *Id.*  He submitted another request that same day that said: "I need medical attention for my injury ASAP!!!" *Id.* at 110.  This one was responded to simply as "addressed." *Id.*

On December 22, 2014, Plaintiff submitted the following request:

I went to the hospital BEFORE I came here.  But when I got here, I havnt been given the PROPER medical treatment.  I don't know what you guys call PROPER MEDICAL TREATMENT, but being only seen by the doctor for maybe 1 minute, if that.  And being sent back with Ibupro. for only a couple of days that[']s not proper medical attention at all.  And now I am having to go a whole week a[nd] suffer through pain just to see a doctor that is going to give me the same thing that[']s not helping.  This isn[']t proper medical attention.

-5-

*BC Defts' Ex.* A-1 at 113.  In response, Lieutenant Darner said he would ask the nurse to see Plaintiff that day about his complaints of pain.  *Id.*  Medical staff put him on the list to see the doctor on Sunday, which would have been December 28, 2014.

On December 24th, Plaintiff submitted a grievance that said: "Well Sunday is still not helping the fact that I am having to go a whole week with nothing but suffering pain.  Its like the nurses or doctors don[']t care about inmates', health and/or conditions at the facility." *BC Defts' Ex.* A-1 at 120.  On December 27th, Lieutenant Darner responded that Plaintiff had been seen by the jail doctor.  *Id.*  Further, he was told to submit his request to the medical staff "for any discomfort you may be having."  *Id.*

On December 29th, Plaintiff was prescribed Ibuprofen 600 mg., twice a day, for another ten days.  *Med. Deft's Ex.* 1-C.  On January 13, 2015, Plaintiff submitted the following request:

> I WANT TO KNOW WHY I AM THE ONLY PERSON WHO HAS TO CONSIST[E]NTLY PUT IN A GRIEVANCE OF SOME SORT TO GET MEDICAL ATTENTION?  I STILL HAVE NOT SEEN OR BEEN SEEN BY A MEDICAL STAFF ABOUT MY LEG.  I NEED MORE THEN JUST A RESPONSE LYING TO ME FROM THE NURSE SAYING I[']M GOING TO SEE A DOCTOR.

*BC Defts' Ex.* A-1 at 126.  The following day, he was told that the doctor had seen him and said his leg was fine.  *Id.*  It was noted that there would be some pain during the healing process. *Id.* Further he was told he had been "cleared" by the doctor at the hospital.  *Id.*

Plaintiff submitted a request on January 14, 2015, asking to see medical staff about getting something for the pain in his leg.  *BC Defts' Ex.* A-1 at 39.   On January 16, 2015, Plaintiff was prescribed Ibuprofen, 400 mg., twice a day, for seven days.  *Med. Deft's Ex.* 1-C.

-6-

On January 17, 2015, Plaintiff complained that Nurse Peggy had been "real short" with him and rude to him on the prior day. *BC Defts' Ex.* A-1 at 128.

Plaintiff testified that he never saw the doctor again while incarcerated at the BCDC. However, he indicated he did receive Ibuprofen from December 12, 2014, until January 23, 2015.

Plaintiff was asked to describe how Nurse Chaney violated his federal constitutional rights. Plaintiff responded that Nurse Chaney had not given him the right medication. He also blamed her for taking the leg brace away from him. Plaintiff testified she told him that he walked fine without the brace. Plaintiff testified that this was not true and that without the brace he was hardly able to walk around. Instead, he spent his time seated at a table or on the steps.

With respect to Sheriff Cradduck, Plaintiff testified he did not believe the Sheriff was involved in his medical care. However, Plaintiff testified that he is over the jail, which includes medical treatment.

With respect to the remaining Benton County Defendants, Plaintiff testified they just forwarded his grievances to the medical staff. He believed they should have spoken to him or responded to the grievances themselves.

## 2. Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is,

a reasonable jury could return a verdict for either party." <u>RSBI Aerospace, Inc. v. Affiliated FM Ins. Co</u>., 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. <u>See Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 256 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. <u>See McCleary v. ReliaStar Life Ins. Co</u>., 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

**3. Discussion**

Nurse Chaney maintains she is entitled to summary judgment in her favor because she was not deliberately indifferent to Plaintiff's serious medical needs.

The Benton County Defendants move for judgment in their favor on the following grounds: (1) there is no evidence of personal involvement on Sheriff Cradduck's part; (2) they were not deliberately indifferent to Plaintiff's serious medical needs; (3) there is no liability for unanswered grievances; (4) negligence does not state a constitutional claim; and (5) they are entitled to qualified immunity.

**(A). Section 1983**

Section 1983 imposes civil liability upon one:

-8-

who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.

**(B).  Medical Care**

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims.  Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012).  The deliberate indifference standard has both an objective and a subjective component. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997).

To prevail on his claim, Plaintiff must demonstrate that (1) he suffered an objectively serious medical need, and (2) the defendant actually knew of the medical need but, subjectively, was deliberately indifferent to it.  Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006).

"An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Jones v. Minnesota Dep't of Corrections, 512 F.3d 478, 481 (8th Cir. 2008) (internal quotation marks and citation omitted).

"Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotation marks and citation omitted).  The deliberate

-9-

indifference standard is not met by the exercise of professional judgment in refusing to implement an inmate's requested course of treatment.  Vaughn v. Gray, 557 F.3d 904, 908-09 (8th Cir. 2009).  Nor is the standard met by demonstrating a doctor committed medical malpractice.  Jackson v. Buckman, 756 F.3d 1060, 1065-66 (8th Cir. 2014).

Plaintiff has "no constitutional right to receive a particular or requested course of treatment."  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).  "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."  Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992).

"The inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment."  Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (citation omitted).  "Grossly incompetent or inadequate care" will suffice only if "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."  Dulany, 132 F.3d at 1242.

**(C).  Medical Defendant's Motion**

Conduct more egregious than that at issue in this case is necessary to demonstrate deliberate indifference.  While there may have been some initial period of delay in providing the Plaintiff with pain relievers, Plaintiff testified he did receive Ibuprofen beginning on December 12, 2014.  Pietrafesco v. Lawrence County, S.D., 452 F.3d 978, 983 (8th Cir. 2006)(showing of deliberate indifference is greater than even gross negligence and requires more than mere disagreement with treatment decisions).  Furthermore, "[t]o avoid summary judgment an inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical

-10-

evidence to establish that the delay had a detrimental effect." <u>Gibson v. Weber</u>, 433 F.3d 642, 646 (8th Cir. 2006). There is no verifiable medical evidence in the record to establish that his knee or ankle was harmed.

Plaintiff maintains he should have been provided with the medication prescribed by the hospital doctor. However, the change of a medication given prior to incarceration, usually shows no more than a disagreement with the proper course of treatment. <u>Vaughn v. Lacey</u>, 49 F.3d 1344, 1346 (8th Cir. 1995).

Plaintiff's claim that Nurse Chaney failed to give him the proper medication is without merit. All medication Plaintiff received was prescribed by Dr. Saez--not Nurse Chaney. With the exception of the December 16th complaint when he was seen by Nurse Chaney in response, Plaintiff's complaints that the medication was not effective were answered by other medical personnel. <u>See e.g.</u>, <u>Ripson v. Alles,</u> 21 F.3d 805, 808-09 (8th Cir. 1994)(§ 1983 liability requires personal or direct involvement in alleged constitutional violation).

With respect to his argument that his brace was taken away too quickly, this amounts to nothing more than a disagreement with his course of treatment. Plaintiff never mentioned in any of his medical requests that he was unable to walk on his leg without the brace. "The record does not support a finding that the medical care in this case was 'so inappropriate as to evidence intentional maltreatment.'" <u>Jolly v. Knudsen</u>, 205 F.3d 1094, 1097 (8th Cir. 2000)(<u>quoting Smith v. Jenkins</u>, 919 F.2d 90, 93 (8th Cir. 1990)).

### (D). Benton County Defendants' Motion

"Under the Constitution . . . the range of acceptable medical care is broad. Jailers bear only the responsibility to identify medical needs that are so obvious that even a layperson would

AO72A
(Rev. 8/82)

easily recognize the necessity for a doctor's attention." <u>Jenkins v. County of Hennepin, Minn.</u>, 557 F.3d 628, 633 (8th Cir. 2009)(internal quotation marks and citations omitted). "The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Id.*

In this case, Plaintiff maintains his constitutional rights were violated when the Defendants simply forwarded his medical requests and his complaints about his treatment to the medical staff. There is no evidence in the record suggesting the Benton County Defendants were involved in anyway in deciding what medical treatment the Plaintiff should receive. <u>Ripson,</u> 21 F.3d at 808-09 (§ 1983 liability requires personal or direct involvement in alleged constitutional violation).

The Plaintiff's claims against Sheriff Cradduck are totally conclusory. Plaintiff has not asserted any factual basis for a claim against the sheriff except for his overall responsibility for the jail and for having a trained staff. Nothing in the record before the Court suggests any personal involvement by Sheriff Cradduck in any alleged constitutional violations.

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. <u>See Monell v. Department of Social Services</u>, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." <u>White v. Holmes</u>, 21 F.3d 277, 280 (8th Cir. 1994); <u>see also</u> <u>Whitson v. Stone County Jail</u>, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); <u>Keeper v. King</u>, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for

-12-

supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendant, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."  Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) (quoting Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006)); Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); Mark v. Nix, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).

There are no allegations that Sheriff Cradduck was involved in anyway with the decision of whether the Plaintiff should receive medical treatment, the type of medication he should be prescribed, or when the use of the leg brace should be discontinued.  Plaintiff did not communicate in anyway with Sheriff Cradduck regarding his grievances or complaints about his treatment.  No plausible individual capacity claim has been stated against Sheriff Cradduck.

**(E).  Qualified Immunity**

Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." Mitchell v. Forsyth, 472 U.S.  511, 526 (1985) (emphasis in original).  It entitles an individual to not be subject to trial or the other burdens of litigation and "is effectively lost if a case is erroneously permitted to go to trial."  Id.  Accordingly, it is important that the question of qualified immunity be resolved as early as possible in the proceedings.  O'Neil v. City of Iowa

-13-

City, 496 F.3d 915, 917 (8th Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001);

Schatz Family ex rel. Schatz v. Gierer, 346 F.3d 1157, 1160 (8th Cir. 2003)).

Analyzing a claim of qualified immunity requires a two-step inquiry. Jones v. McNeese,

675 F.3d 1158, 1161 (8th Cir. 2012). In one step, the deciding court determines whether the

facts demonstrate a deprivation of a constitutional right. Id. (citing Parrish v. Ball, 594 F.3d

993, 1001 (8th Cir. 2010)). In the other, the court determines whether the implicated right was

clearly established at the time of the deprivation. Id. (citing Parrish, 594 F.3d at 1001). In

considering those steps at the summary judgment phase, a district court is required to view the

genuinely disputed facts in the light most favorable to the non-moving party, provided the record

does not so contradict the facts as to render so viewing them unacceptable to any reasonable

juror. O'Neil, 496 F.3d at 917.

As discussed above, I do not believe the facts, viewed in the light most favorable to the

Plaintiff, establish the existence of any violation of Plaintiff's constitutional rights. There is

simply no evidence to suggest the Defendants disregarded "a known risk to the inmate's health."

Gordon ex rel Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006)(citation omitted). Such a

showing is necessary to meet the subjective component of deliberate indifference. Id. As the

answer to the first question of the qualified immunity analysis is no, Defendants are protected

by qualified immunity.

**4. Conclusion**

For the reasons stated, I recommend that: (1) Plaintiff's request to dismiss all official

capacity claims be granted: (2) Plaintiff's request to dismiss all claims against Lieutenant Heath

-14-

AO72A
(Rev. 8/82)

be granted; and (3) with respect to all remaining Defendants, the motions for summary judgment (Docs. 28 & 31) be granted and the case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of June 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-15-